UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN P. CHISMARICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1575 CDP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Stephen P. Chismarich brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Because Chismarich's allegations of error fail, I will affirm the Commissioner's decision.

## I. Procedural History

On July 20, 2012, the Social Security Administration (SSA) denied Chismarich's June 2012 application for DIB, in which Chismarich claimed he became disabled on July 31, 2010, because of bipolar disorder, drug and alcohol

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

addiction, knee injury, and attention deficit hypertension disorder. Chismarich later amended his alleged onset date to August 1, 2012. At Chismarich's request, hearings were held before an administrative law judge (ALJ) on February 13 and April 30, 2014, at which Chismarich, a medical expert, and two vocational experts testified. On May 30, 2014, the ALJ denied Chismarich's claim for benefits, finding vocational expert testimony to support a finding that he could perform work as it exists in significant numbers in the national economy. On September 12, 2015, the Appeals Council denied Chismarich's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, Chismarich asserts that the ALJ committed legal error in three respects, namely, that his residual functional capacity (RFC) assessment is inconsistent with other findings in his decision; that he did not resolve conflicts between vocational expert testimony and the Dictionary of Occupational Titles (DOT); and that he failed to consider the opinion of Chismarich's spouse, who is a doctor, to be a medical opinion. Chismarich requests that the matter be reversed and remanded for an award of benefits or for further proceedings.

## II. Legal Standard

To be eligible for DIB under the Social Security Act, Chismarich must prove

that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it not based on legal error and if there is substantial evidence on the record as a whole to support the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

### III.  The ALJ's Decision

The ALJ found Chismarich to meet the insured status requirements of the Social Security Act through September 30, 2015.  He further found Chismarich not to have engaged in substantial gainful activity since August 1, 2012, the alleged onset date of disability.  The ALJ found Chismarich's residuals of left knee surgery, bipolar disorder, history of learning disorder, and mood disorder to be

severe impairments but not to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then assessed Chismarich's RFC and determined him to have exertional and non-exertional limitations, including:

> The claimant is able to understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and infrequent; can adapt to routine and simple work changes on an infrequent basis; can perform work at a normal pace without production quotas; should not work in a setting which includes constant, regular contact with the general public; and should not perform work which includes more than infrequent handling of customer complaints.

(Tr. 18.) The ALJ found Chismarich's RFC to preclude performance of his past relevant work as a shipping clerk, commercial driver, or service coordinator. Considering Chismarich's RFC, age, education, and work experience, the ALJ determined vocational expert testimony to support a finding that Chismarich could perform other work as it exists in significant numbers in the national economy, and specifically as a cleaner/janitor and mail clerk. The ALJ thus found Chismarich not to be under a disability at any time from August 1, 2012, through the date of the decision.

## IV. Discussion

When conducting judicial review of an ALJ's decision to deny benefits, I must determine whether the decision is based on legal error, and whether the

findings of fact are supported by substantial evidence on the record as a whole. *Wildman*, 596 F.3d at 963. As noted above, Chismarich asserts only that the ALJ committed legal error in denying benefits. Accordingly, while I have reviewed the administrative record in its entirety, a full factual summary of the record is not necessary for me to address Chismarich's claims. Specific facts relevant to disposition of the claims are included in this discussion.

A.    <u>Spouse's Third Party Function Report</u>

Chismarich's spouse is a pediatrician at St. John's Mercy Medical Center. This fact is noted in the record in summaries of Chismarich's social and family history made during various psychiatric evaluations and admission assessments in 2008. (*See* Tr. 382, 396, 453.) There is no evidence in the record to suggest that Chismarich received any medical treatment from, was medically evaluated by, or had a patient-physician relationship with his spouse in any way.

On January 1, 2014, Dr. Chismarich completed a Third Party Function Report for disability determinations wherein she identified her relationship to the claimant as "spouse." (Tr. 262.) Based on her personal observations, Dr. Chismarich provided detailed information about her husband's daily activities, including personal care, meal preparation, house and yard work, ability to get around, ability to shop, money management, hobbies and interests, and social activities. She also provided detailed information regarding the observed effects of

her husband's physical and mental impairments, including limited physical movement because of his knee injury, poor memory, difficulty learning new information, poor task focus, and irritability. Nowhere in this report did she identify herself as a physician or indicate that she was rendering an opinion in her professional capacity. (Tr. 262-70.)

Evidence obtained from persons who have not seen a claimant in a professional capacity in connection with the claimant's impairments is considered evidence from "non-medical sources." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006); *Durden v. Colvin*, 191 F. Supp. 3d 429 (M.D. Pa. 2016). Spouses are considered to be non-medical sources. SSR 06-03p, 2006 WL 2329939, at *6; *Durden*, 191 F. Supp. 3d 429. While the Regulations permit an ALJ to consider evidence from these sources to show the severity of a claimant's impairment(s) and how it affects the claimant's ability to work, *see* 20 C.F.R. § 404.1513(d), the factors for weighing opinion evidence do not apply.[2] SSR 06-03p, 2006 WL 2329939, at *4-5. Instead, the ALJ may consider the nature and extent of the relationship between the source and the claimant, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. *Id.* at *6.

In his written opinion here, the ALJ considered the Third Party Function

---

[2] These factors are set out at 20 C.F.R. § 404.1527(c).

Report as evidence showing the severity of Chismarich's impairments and how they affect his ability to function. (Tr. 25.) The ALJ's treatment of the report was proper under 20 C.F.R. § 404.1513(d) given that Dr. Chismarich completed the report in her capacity as a spouse and not in her professional capacity, which rendered it to be evidence from a non-medical source. Accordingly, the ALJ did not err in failing to consider the report under the § 404.1527(c) factors related to medical opinion evidence, and Chismarich's claim of error fails.

B.  Consistency in Sequential Analysis

Chismarich contends that the ALJ's decision is internally inconsistent because at Step 3 of the five-step analysis, the ALJ stated that Chismarich reportedly had some difficulty remembering doctor's appointments and following written instructions, needed help from others, and needed spoken instructions restated or written down (Tr. 17), but did not include these specific limitations in the RFC analysis at Step 4. In *Lacroix v. Barnhart,* 465 F.3d 881 (8th Cir.2006), the claimant made a similar argument, that is, that the ALJ's Step 4 RFC analysis was inconsistent with the earlier determination made at Step 2 that claimant's impairments significantly limited her functional abilities. The Eighth Circuit soundly rejected this argument, stating that "[e]ach step in the disability determination entails a separate analysis and legal standard." *Id.* at 888 n.3. Because Chismarich bases his argument on a contention that the ALJ's analysis

regarding his mental impairments is inconsistent between Step 3 and Step 4 of the sequential analysis, his argument must be rejected on the basis of the Eighth Circuit's reasoning in *Lacroix*.

To the extent Chismarich argues that permitting this inconsistency runs counter to the Regulations' intent to provide consistency in the evaluation of mental impairments as stated in 20 C.F.R. § 404.1520a, Chismarich's argument is misplaced. In cases involving mental impairments, § 404.1520a requires the SSA to use a "special technique" at Steps 2 and 3 of the sequential analysis to evaluate the severity of a claimant's mental impairments and determine whether they meet or equal a listing. 20 C.F.R. § 404.1520a(d); SSR 96-8p, 1996 WL 374184 (July 2, 1996). Under this technique, an ALJ is required at these steps to rate the degree of a claimant's functional limitations in four broad areas of functioning and to incorporate in his decision pertinent findings and conclusions based on the technique. 20 C.F.R. § 404.1520a(c)-(e). The ALJ did so here. (Tr. 16-17.) While the Regulations state that use of the technique helps the SSA to organize and present findings "in a clear, concise, and consistent manner," 20 C.F.R. § 404.1520a(a)(3), it applies to only Steps 2 and 3 of the five-step sequential analysis. It is not used as part of the RFC assessment.

> The psychiatric review technique described in 20 CFR 404.1520a . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult

> mental disorders listings. *The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.* The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]

SSR 96-8p, 1996 WL 374184, at *4 (emphasis added). A claimant's RFC is assessed after use of the technique is completed. *See* 20 C.F.R. § 404.1520a(c)(3).

An ALJ's RFC determination requires a more detailed assessment than the special technique provides, and indeed is a "multidimensional description" that represents "the most that an individual can do despite his or her limitations or restrictions." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A; 1996 WL 374184, at *4. *See also* 20 C.F.R. § 404.1545(a). With this more searching analysis, an RFC determination is not flawed "simply because it does not reflexively recite the ALJ's prior finding" from an earlier step in the analysis. *Gann v. Colvin*, 92 F. Supp. 3d 857, 885 (N.D. Iowa 2015).

Accordingly, the ALJ's failure to include specific Step 3 findings in his RFC assessment did not render his decision inconsistent. Because the ALJ committed no legal error, Chismarich's claim to the contrary fails.

C. <u>Vocational Expert Testimony</u>

At the hearing on April 30, 2014, the ALJ posed the following hypothetical

to the vocational expert:

> . . . [T]his hypothetical claimant could lift and carry 20 pounds occasionally, 10 pounds frequently; could stand or walk for six hours out of eight; sit for six; could occasionally stoop, kneel and crouch; pushing and pulling with the legs was limited to occasional use foot controls on the left.
>
> And, in addition, this hypothetical claimant was able to understand, remember and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others was casual and infrequent.
>
> Can adapt to routine/simple work changes on an infrequent basis. Can perform work at a normal pace without production quotas; should not work in a setting which includes constant or regular contact with the general public and should not perform work which includes more than infrequent handling of customer complaints.

(Tr. 73-74.) In response, the expert testified that such a person could perform unskilled, light work as a cleaner/janitor, listed at DOT 323.687-014; and as an interoffice mail clerk, listed at DOT 209.687-026. The ALJ asked the expert if his testimony was consistent with the DOT and the Selected Characteristics of Occupations (SCO), to which the expert responded that it was. (Tr. 74-75.)

In his written decision, the ALJ found that the expert's testimony was consistent with the information in the DOT and the SCO, and he relied on this testimony to support his finding that Chismarich could perform work as a cleaner/ janitor and as a mail clerk. (Tr. 27.) Chismarich argues, however, that the DOT describes both jobs as requiring functioning at a greater level than described in the

RFC and hypothetical question, and that the ALJ erred when he failed to resolve this conflict between the vocational expert testimony and the DOT.

An ALJ has a duty to make sufficient inquiry to determine whether conflict exists between vocational expert testimony and the DOT, and to resolve any conflict. *See generally Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014). The failure to do so precludes an ALJ from relying on vocational expert testimony to find a claimant not disabled. *Id.* at 633. For the following reasons, the ALJ satisfied his duty here and did not err.

1. *Mail Clerk*

Under DOT 209.687-026, a mail clerk is defined as having a reasoning level of 3, which involves applying "common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form"; and a language level of 2, which involves reading instructions. 1991 WL 671813. Chismarich argues that these requirements exceed his RFC and the hypothetical question posed to the vocational expert to the extent that they limit him to simple instructions and non-detailed tasks.

It is well established that the DOT describes the upper limits of skills for all jobs in a given occupational category. DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007). Its

descriptions are not meant to be read as requirements of every job within a category. *Id.*

The Eighth Circuit has repeatedly held that any potential inconsistency between a reasoning level of 3 and the ability to follow only simple instructions and perform non-detailed tasks is not a conflict that an ALJ must resolve. *Renfrow v. Astrue,* 496 F.3d 918, 921 (8th Cir. 2007); *Hillier v. Social Sec. Admin.,* 486 F.3d 359, 367 (8th Cir. 2007). *See also Welsh v. Colvin,* 765 F.3d 926, 930 8th Cir. 2014); *Filbert v. Colvin*, No. 4:14-CV-00209-JAR, 2015 WL 1474873, at *11 (E.D. Mo. Mar. 31, 2015).

> When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained in his decision to credit the VE's testimony, the ALJ has complied with SSR 00-4p[.] . . . The failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning does not require a remand.

*Welsh*, 765 F.3d at 930.

Here, Chismarich does not challenge the hypothetical posed to the vocational expert, and the ALJ properly questioned the expert whether there were any inconsistencies between his testimony and the relevant DOT job descriptions. The ALJ explained in his decision that the testimony was indeed consistent with the DOT and credited the expert's testimony. Chismarich's counsel was given the opportunity to question the expert at the hearing about any apparent inconsistencies

between his testimony and the DOT, but he did not raise this claimed inconsistency at the hearing. On this record, and in accordance with Eighth Circuit precedent that an ability to follow simple instructions and perform non-detailed tasks is not inconsistent with level 3 reasoning, there is no need to remand this matter to the Commissioner for resolution of any perceived conflict. *Welsh*, 765 F.3d at 930.

Nor is there a conflict between reading instructions – as listed for language level 2 – and being limited to simple instructions and non-detailed tasks. Chismarich provides no support for his bare assertion that such a conflict exists, and I am aware of none.

2. *Cleaner/Janitor*

The vocational expert referred to DOT 323.687-014 to describe work that Chismarich can perform as a cleaner/janitor. As defined by the DOT, this job may involve "render[ing] personal assistance to patrons." 1991 WL 672783. Chismarich argues that this requirement exceeds his RFC and the hypothetical question posed to the vocational expert to the extent that they limit him to only casual and infrequent contact with others.

As discussed above, DOT definitions are not absolute job requirements but instead are generic descriptions of the upper limits of skills for all jobs in a given occupational category. Because of this, "a claimant's reliance on the DOT as a definitive authority on job requirements is misplaced[.]" *Page*, 484 F.3d at 1045;

*see also Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (claimant's argument that VE testimony on available jobs inconsistent with DOT rejected because "not all of the jobs in every category have requirements identical or as rigorous as those listed in the DOT.").

This Court has specifically found that a job that may include some interaction with patrons, such as that defined in DOT 323.687-014, is not inconsistent with an RFC limitation to casual and infrequent contact with others. *See Rogers v. Colvin*, No. 4:12CV00619AGF/NAB, 2013 WL 4482705, at *9 (E.D. Mo. Aug. 20, 2013); *Blocker v. Astrue*, No. 4:10CV0298 RWS TCM, 2010 WL 5572743, at *16 (E.D. Mo. Dec. 13, 2010), *report and recommendation adopted*, No. 4:10CV298 RWS, 2011 WL 97741 (E.D. Mo. Jan. 12, 2011). *See also Hulsey v. Astrue*, 622 F.3d 917 (8th Cir. 2010) (RFC limitation to only superficial interpersonal contact not incompatible with performance of cleaner/ housekeeper job as defined at DOT 323.687-014).

The ALJ inquired of the expert whether there was any conflict between his testimony and the DOT, and the expert responded that there was not. Because there is indeed no conflict here, the ALJ was under no further duty to inquire or to resolve any potential conflict. Chismarich's claim of error is denied.

### VI. Conclusion

For all of the foregoing reasons, the ALJ committed no legal error in his

determination that Chisrmarich was not under a disability since his alleged onset date.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Stephen P. Chismarich's complaint is dismissed with prejudice.

A separate Judgment is entered herewith

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2017.